CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 1 5 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CLINTON D. AGEE, <br>     Plaintiff <br><br> v. <br><br> JO ANNE B. BARNHART, COMMISSIONER <br> OF SOCIAL SECURITY, <br>     Defendant. | Case No. 6:04-CV-00032 <br><br> By: Hon. Michael F. Urbanski <br>     United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Clinton D. Agee brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XVI Social Security Act. The case was referred to the undersigned magistrate judge on December 6, 2004 for report and recommendation. Having reviewed the record and after briefing and oral argument, it is recommended that the Commissioner's motion for summary judgment be granted as the Commissioner's decision is supported by substantial evidence and proper under the law.

The crux of plaintiff's argument is that the ALJ erred by discounting his claim that he is disabled by fatigue. To the contrary, the ALJ exhaustively catalogued Agee's medical history and parsed the record. While Agee has been diagnosed with diabetes mellitus and hepatitis C virus (HCV), those conditions are being treated with medications, and no doctor has opined that Agee's impairments are disabling. As such, there is substantial evidence to support the Commissioners finding that Agee's fatigue is not disabling.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is a substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan; 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE BACKGROUND

Plaintiff was born on December 10, 1950 and was fifty years old as of July 19, 2001, when he alleges he became unable to work. (Transcript, hereinafter "R.", at 55.) Plaintiff completed high school and two years of college-level work. Id. at 76. Plaintiff previously worked as an industrial electrician. Id. at 79, 225. The medical evidence shows that plaintiff suffers primarily from two medical conditions, chronic Hepatitis C Virus ("HCV") and diabetes. Id. at 105-06, 109, 110, 112, 114-17, 131-32, 161.

Plaintiff filed a claim for SSI on May 24, 2002, alleging disability because of the above-mentioned conditions and hypertension. Id. at 53. The Agency denied his claim at all levels of administrative review. Id. at 28, 32. On November 17, 2003, an administrative law judge ("ALJ") conducted a hearing at which plaintiff, represented by counsel, and a vocational expert ("VE") testified. Id. at 211-31. On January 28, 2004, the ALJ issued a decision finding that plaintiff could perform simple, light work which did not require more than occasional climbing,

2

balancing, stooping, crouching, or crawling. Id. at 20. The ALJ additionally found that plaintiff could stand/walk and sit about six hours in an eight-hour workday. Id. at 21. In part based on the testimony of the VE, the ALJ found that plaintiff could perform work as a night watchman or an electrical assembler. Id. Plaintiff then filed this action seeking judicial review of the Commissioner's findings.

From 1984 until 1992, plaintiff performed work as an electrician. Id. at 216. Plaintiff stopped working in 1992 in order to stay at home to care for his sick wife. Id. at 216-17. While Agee's application claims onset as of July 19, 2001, at the hearing he testified that he became unable to work around June, 1997 when he was diagnosed with HCV following double hernia surgery. Id. at 218. Agee's liver biopsy in 1997 revealed hepatitis with cirrhosis. Id. at 105. Agee was subsequently treated at Duke University with interferon and ribaviron for twelve months, from 1998 to 1999, after which he had undetectable HCV levels. Id. at 114.

On the morning of July 19, 2001, Agee was driving his wife to Charlottesville when he noted increased blurriness of vision. Agee proceeded to the UVA Hospital Emergency Department and was admitted to the hospital for one day. Agee was diagnosed with new onset diabetes mellitus by Dr. Brian Wispelwey. Dr. Wispelwey's notes reflect that Agee "described himself as being generally ill over the past several months and unable to keep up with his normal exercise routine." (R. 114) Agee was found to have elevated blood sugar. A physical examination was unremarkable except for elevated blood pressure and weight gain. Id. at 115. Dr. Wispelwey counseled plaintiff on the importance of a proper exercise and weight loss for a diabetic. Id. at 116. Plaintiff was discharged with Glipizide and sliding-scale insulin for his diabetes and Ramipril for his hypertension. Id. at 117. Although Dr. Wispelwey also suspected a

3

recurrence of HCV, Agee's synthetic function was found to be in normal limits when checked prior to discharge.

Notes from a follow-up visit to UVA on January 15, 2002 reflect that Agee was "doing extremely well. BS (blood sugar) under control." (R. 140)

On March 25, 2002, medical reports indicate that plaintiff was again taking interferon and ribaviron for his HCV and tolerating them well. Id. at 112. Plaintiff also had occasional headaches which he was controlling with Motrin. Id.

On June 3, 2002, Cynthia Yoshida, M.D., of the University of Virginia Clinic, evaluated plaintiff. Id. at 111. Dr. Yoshida reported that plaintiff had not been seen in the clinic since March. Id. Plaintiff reported that he had lost some weight due to poor appetite. Id. at 110. Plaintiff also reported difficulty sleeping when he did not take his sleeping pills but denied being depressed or having any other symptoms. Id. A physical examination of plaintiff was unremarkable excepting for plaintiff having mildly elevated blood pressure. Id.

On June 4, 2002, it was reported that plaintiff's white-cell count was low, showing that he had some improvement on interferon. Id. at 137. Plaintiff's diabetes was also reportedly controlled through the use of medication. Id. at 139.

On June 27, 2002, Evan Heald, M.D., of the University of Virginia Clinic, evaluated plaintiff. Id. at 108. Dr. Heald stated that when last examined, plaintiff complained of dizziness from which plaintiff still occasionally suffered, but that he treated it successfully with grapefruit juice. Id. Although plaintiff did not check his blood sugar when he was dizzy, Dr. Heald noted that this symptom tended to occur on days when plaintiff had not taken his sliding-scale insulin. Id.

4

On July 8, 2002, plaintiff again went to the UVA clinic, this time for treatment of his HCV. Id. at 105. Plaintiff reportedly had been on ribaviron and interferon since February. Id. at 105. Plaintiff reported mild irritability and occasional nausea, fatigue, and mild headaches. Id. He denied having any other symptoms. Id. Plaintiff's white blood cell count was again down, and it was noted that if this trend continued, his dosage of ribaviron and interferon could be decreased. Id. at 106.

On August 14, 2002, plaintiff was evaluated for complaints of neck pain, urinary frequency, dizziness, and pre-syncope. Id. at 131. An examination of plaintiff's neck revealed no abnormality. Id. at 132. X-rays of plaintiff's cervical spine were normal and showed only minimal arthritic changes. Id. at 133-34. Plaintiff's reflexes were intact and there was no evidence of muscular weakness. Id. at 135.

On March 26, 2003, William E. Ramsey, M.D., evaluated plaintiff at the request of the state agency. Id. at 159. Plaintiff told Dr. Ramsey that he had been diagnosed with HCV and cirrhosis and that the treatment with ribaviron and interferon had failed. Id. He also reported being a "diabetic for many years" and took medication. Id. He stated that his main complaint was excessive fatigue and that he could not work for more than 10 minutes at a time. Id. at 159.

Dr. Ramsey stated that a cardiovascular examination showed a regular rhythm with no murmurs, rubs, gallops, or irregularities. Id. at 161. Dr. Ramsey noted that an abdomen evaluation indicated that plaintiff might have ascites,[1] but no liver or spleen enlargement, or any masses. Id. at 161. Dr. Ramsey stated that plaintiff was hyper-reflexive and "tended to stagger around quite a bit when attempting to test Romberg function or to do tandem walking." Id. Dr.

---

[1] Ascites is the effusion and accumulation of serous fluid in the abdominal cavity.

Ramsey stated that plaintiff complained of decreased pinprick sensation but that he could not find any focal abnormality or evidence of peripheral neuropathy specifically wherever he was tested. Id. Dr. Ramsey noted that Agee has documented hepatitis C disease with cirrhosis based on prior liver biopsies. Dr. Ramsey noted some anxiety and depression and diabetes mellitus. Id. Dr. Ramsey also stated that plaintiff possibly has had balance problem and that he walked with a slightly peculiar gait, but no definite neurological dysfunction could be documented. Id. at 162.

Dr. Ramsey reported that plaintiff had normal strength in his upper and lower extremities. Id. at 163. Plaintiff had normal coordination, gait, and station when standing, but was questionably abnormal in these areas during Romberg testing and standing-on-one-foot testing. Id. Plaintiff had normal ranges of motion in his cervical spine, grossly normal range of flex motion in the dorsolumbar spine, and questionably abnormal extension, right lateral flexion, and left lateral flexion. Id. at 164. Plaintiff had normal ranges of motion in shoulders, elbows, hips, knees, and wrists. Id. at 165.

On September 6, 2002, R.S. Kadian, M.D., a physician for the state agency, evaluated the medical evidence and reported that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds. Id. at 150. Plaintiff could stand and/or walk a total of six hours in an eight-hour workday. Id. Plaintiff had an unlimited ability to push and/or pull. Id. at 150.

On April 10, 2003, E. Franco, M.D., a physician for the state agency, evaluated the medical evidence and reported that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds. Id. at 168. Plaintiff could stand and/or walk a total of six hours in an eight-hour workday. Id. Plaintiff had an unlimited ability to push and/or pull. Id. at 168.

The record does not contain any medical opinions indicating that Agee cannot perform any substantial gainful activity.

At plaintiff's hearing before the ALJ, Robert Jackson, a VE, appeared and testified. Id. at 228. The ALJ presented a hypothetical individual of plaintiff's age, education, and work history, who had the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; who could stand or walk a total of six hours in an eight hour day; sit a total of six hours in an eight hour day; and who could only occasionally climb, balance, stoop, kneel, crouch, and crawl. Id. at 229. The VE testified that plaintiff could perform work as an electronics assembler and had transferrable skills into that job. Id. The VE also stated that plaintiff could also perform work as a night watchman. Id. at 230. The VE stated that there was no conflict between his testimony and the Dictionary of Occupational Titles. Id.

## ANALYSIS

In denying plaintiff's claim, the ALJ relied on the Commissioner's Medical-Vocational Guidelines, specifically, Grid Rule 202.14. Id. at 21. The Grid Rule is applicable when the claimant: (1) is 50-54 years old; (2) is at least a high-school graduate; (3) has a skilled work background which does not yield transferrable skills; and (4) has a residual functional capacity limited to "light" work. "Light" work

> involves lifting no more than 20 pounds with frequently lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category requires a good deal of walking or standing.

20 C.F.R. § 416.967(b). Light work requires standing or walking off and on, for a total of approximately 6 hours out of an eight-hour workday. SSR 83-10.

7

In the five-step sequential evaluation prescribed under the regulations, the initial burden is on the claimant to show an inability to perform their past relevant work. See 20 C.F.R. § 416.920. Once the claimant has demonstrated that they are incapable of returning to their past relevant work, the burden of going forward shifts to the Commissioner. See Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

In this case, the ALJ determined that plaintiff "is unable to perform any of his past relevant work." (R. 21) As such, the Commissioner must establish with substantial evidence that plaintiff can perform alternative jobs which exist in significant numbers in the national economy. McLain v. Schweiker, 715 F.2d 866, 869 (4th Cir. 1983). Plaintiff notes that if the ALJ had found plaintiff's residual functional capacity as being limited to "sedentary" work, Grid Rule 201.14 would have required the ALJ to conclude that plaintiff was disabled. (Pl. Mem. Supp. Mot. Summ. J. at 8.) Plaintiff argues that the ALJ's finding regarding plaintiff's ability to be on his feet for up to six hours of an eight-hour day is not supported by substantial evidence. Id. at 7. An ALJ's factual determinations must be upheld if supported by substantial evidence, and proper legal standards were applied, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

In this case, the ALJ relied on the opinions of two state agency physicians in reaching his conclusion that plaintiff can perform light work. (R. 19) Under the regulations, state agency physicians are permitted to consider the evidence in the case record and make findings of fact about the medical issues including the claimant's residual functional capacity. See 20 C.F.R. § 416.927(f)(1). As with the record of an examining physician, the Commissioner accords the opinions of state agency physicians weight consistent with the objective medical evidence underlying their opinions. See 20 C.F.R. 416.927(a)-(e).

8

Case 6:04-cv-00032-NKM-mfu   Document 20   Filed 04/15/05   Page 8 of 16   Pageid#: 77

Here, the evidence in the record supports the ALJ's decision that plaintiff had the residual functional capacity to perform the jobs indicated by the VE. Nowhere in the record does any physician advise plaintiff to cut back on his daily activities or opine that he is disabled. The ALJ's assessment of the opinions of the state agency physicians accords with the limitations imposed on him by his physicians.

Plaintiff's assertions that the ALJ improperly weighed his credibility regarding his residual functional capacity are similarly without merit. It is well-settled that credibility determinations are in the province of the ALJ and that the courts are loathe to interfere with them. See Hatcher v. Secretary of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989). The ALJ is not required to accept all subjective testimony at face value. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). In this case, the ALJ considered plaintiff's allegations as to the length of time he was able to work given his medical conditions and did not find them credible. Because the ALJ had an opportunity to observe plaintiff's demeanor and to determine his credibility, his observations are to be given great weight. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Here, plaintiff's testimony as to his fatigue was considered in the context of all of the evidence before the ALJ and it was determined that plaintiff's testimony was not entirely credible. (R. 18-19) The ALJ recognized that plaintiff's residual functional capacity was limited somewhat through his determination that plaintiff was capable of light, and not medium, work. Id. at 17. In making this determination, the ALJ considered plaintiff's examination and treatment reports, the clinical and laboratory findings, the effectiveness of plaintiff's treatment, the alleged

9

side effects of plaintiff's medications, and the opinions of various treating and examining physicians. Id. at 18-19.

All of the arguments plaintiff makes in opposition to the ALJ's determination that plaintiff is capable of light work are without merit. Plaintiff's first argument is that the ALJ improperly found plaintiff to lack credibility based on the dates plaintiff had worked and the alleged onset date. To be sure, the ALJ erred in confusing plaintiff's alleged onset date of 2001 with that of his wife, of 1990. But this error is harmless given the other substantial evidence of record. Further, although Agee only claims onset as of July 19, 2001, at which time he was diagnosed with diabetes, he testified at the hearing that he became unable to return to work in June, 1997, when he was diagnosed with HCV. (R. 218)

Similarly, plaintiff's second argument, that the ALJ erred in stating that the records do not reflect consistent complaints of excessive fatigue, is without merit. It is clear that the text quoted by Agee's counsel from the ALJ's opinion refers to Agee's medical records. Although the thrust of plaintiff's application for disability is excessive fatigue, plaintiff's brief only cites to two occasions on which Agee complained of fatigue to medical providers, once to a triage nurse on July 19, 2001, and once to the internist who performed the consultative examination on March 26, 2003. (R. 120) (noting plaintiff complained of "extreme fatigue"); id. at 159 (noting that plaintiff "tells [the examining doctor" his main complaint is of excessive fatigue."). The ALJ was correct in noting the paucity of plaintiff's complaints of fatigue to medical providers as reflecting on the severity of his claimed impairment. (R. 18) The regulations direct the Commissioner to accord weight to the testimony consistent with the objective medical evidence underlying their opinions. See 20 C.F.R. 416.927(a)-(e). In this case, the medical records reflect

10

that Agee's HCV and diabetes were controlled with medications and that he was doing well. (R.139-41)

Plaintiff's argues next that the ALJ erred in remarking on certain notations in the medical records during three doctor visits in 2002. The ALJ's reference to the fact that plaintiff's medical records indicated that he had symptoms of depression or any other constitutional symptoms, had normal blood sugar, and had a normal ophthalmological examination in 2002, simply provide support for the ALJ's statement in the previous two lines of the decision, to wit: "While claimant has been diagnosed with hepatitis C which could reasonable be expected to produce some fatigue, the level of severity alleged is not supported by the evidence of record. The records do not reflect consistent complaints of excessive fatigue; and, hepatic synthetic function has remained normal." (R. 18) The regulations provide that there must be medical signs and laboratory findings which show that a claimant has a medical impairment which would reasonably be expected to produce the alleged symptoms, see 20 C.F.R. § 416.929(a)-(b), which the ALJ found lacking in this case.

Plaintiff's fourth argument faults the ALJ for his finding that plaintiff's complaints that he becomes fatigued after a short period of time are inconsistent with his statements that he worked on a car for a whole day. Plaintiff contends that the ALJ's failure to investigate whether plaintiff had taken breaks during the day after working for fifteen minute periods constituted "decision by ambush." (Pl. Mem. Supp. Mot. Summ. J. at 13.) Plaintiff cites a footnote in Culler v. Apfel, a 1999 unpublished district court opinion from the District of Kansas, for the position that the "ALJ may not merely assume the worst without developing the record." See Pl. Mem. Supp. Mot. Summ. J. at 13 (citing Culler, 1999 WL 318155 (D. Kan. 1999)).

11

The record, as presented, overwhelmingly favors the interpretation gleaned it by the Commissioner, and as such, is not a "decision by ambush." In Culler, the court ruled that the ALJ erred in not investigating "what efforts or measures, if any, the plaintiff took to cope with her physical condition" while attending junior college among a host of other errors. The remand provides that

> this case must be remanded for additional proceedings, including further development of the record and findings regarding the onset of the plaintiff's emotional or personality problems; whether daily employment would have aggravated any of her physical or emotional problems in 1992 and whether she could have coped with any aggravated conditions; whether the plaintiff's venous insufficiency was chronic and a pain-producing impairment with and without ulcerations; and whether the course of treatment for plaintiff's venous insufficiency and resulting ulcers (e.g., intermittent elevation of legs, rest, avoidance of extended periods of sitting or standing, and bed rest) would have interfered with her ability to perform other work. In addition, the Commissioner shall make express findings in accordance with Luna concerning claimant's claim of disabling pain from her back and circulatory conditions.

See id. *12. Here, in contrast, the ALJ simply points out in response to Agee's statement that he became fatigued after a short period of time (R. 225), that his medical records noted that he worked on a car all day in early May, 2002. This is hardly "decision by ambush." The Commissioner certainly may assess the credibility of plaintiff's complaints by his own statements contained in medical records. Had counsel for plaintiff been concerned about this point, he could have clarified the issue by questioning Agee about it at the hearing. Moreover, the ALJ's finding that plaintiff could perform light work would not subject him to any work nearly as strenuous as that encountered in the course of "working on car all day." (R. 138)

12

Plaintiff's fifth argument also lacks merit. Plaintiff states that contrary to the ALJ's finding, the ALJ notes on page 18 of the record that plaintiff did complain of occasional fatigue. Here, the ALJ's point is that plaintiff, having alleged fatigue so severe that it renders him incapable of performing light work, did not consistently complain of the condition to his physicians. The ALJ notes that in July 2002, plaintiff complained of "occasional" nausea and fatigue. (R. 105) The ALJ correctly found that "occasional" symptoms are not indicative of a totally-disabling medical condition.

Plaintiff's sixth argument is that the ALJ's recitation of medical reports in 2002 and 2003 are irrelevant to the question whether plaintiff suffered from disabling fatigue. Again, plaintiff's argument misses the point of this aspect of the ALJ's decision, which illustrates the fact that Agee's medical records do not contain objective medical findings reflective of medical condition characterized by disabling fatigue.

Plaintiff's seventh and ninth arguments contend that the ALJ made too much of Agee's reports of daily activities. In particular, Agee faults the ALJ for noting that a June 11, 2003 medical record "reported that he required no help with his activities of daily living." (R. 18) Agee contends that the ALJ should disregard this notation as it was merely a box on a form "most likely...checked by a nurse." (R. 18, 193) The regulations require the ALJ to consider plaintiff's daily activities in assessing a claimant's subjective complaints. See 416.929(c)(3)(i). Moreover, the information in question was corroborated by plaintiff's own Daily Activities Questionnaire, in which he reported that he drives his wife to appointments, does grocery and other shopping, feeds dogs, and does household chores such as cleaning (no vacuuming) and laundry. (R. 87-93) Plaintiff stated he cuts the lawn with a riding mower when his health

13

condition allows. While plaintiff argues that the ALJ's review of Agee's Daily Activities Questionnaire was "unfair and inaccurate" in that it did not note that plaintiff qualified his questionnaire responses to some extent by adding phrases such as "when I can" or "as I am able," (R. 87-88), the totality of plaintiff's responses are consistent with the ALJ's decision. As such, the ALJ acted properly in determining that plaintiff's daily activities were inconsistent with his claim of total disability.

Finally, Agee's eighth argument, suggesting that the ALJ glossed over his historic problems with diabetes and hepatitis, is plainly wrong. The ALJ extensively reviewed all of Agee's medical records and conditions in the decision. The Social Security Act places the burden of proof on the individual who is seeking benefits, stating that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A). The Social Security regulations also place the burden of proving disability on the claimant. 20 C.F.R. § 404.1512(a). See Reichenbach v. Heckler, 808 F.2d 309, 311 (4th Cir. 1985). It is clear from the court's review of the record in this case that the claimant has not met this burden.

While Agee has suffered from certain health problems, no physician has opined that his condition is disabling. Careful review of Agee's condition reflected in his medical records does not provide evidence sufficient to meet his burden of establishing that he is disabled from all substantial gainful activity. Agee's own statements concerning his daily activities confirm the ALJ's decision. While Agee has been diagnosed with and suffers from diabetes and hepatitis C

14

virus, there has not been a sufficient showing that these conditions are disabling. The ALJ's decision to that effect is supported by substantial evidence.

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is more than enough evidence to support the conclusion that plaintiff was not disabled as defined under the Social Security Act. See Pierce v. Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). The ALJ's determination that plaintiff's subjective complaints of fatigue did not comport with the evidence in the record is supported by substantial evidence and is an acceptable credibility determination based upon specific evidence in the record. See Smith v. Schweiker, 719 F.2d 723, 723 n.2 (4th Cir. 1984). As such, it is the recommendation of the undersigned that defendant's motion for summary judgment be granted.

## CONCLUSION

For the reasons outlined above, it is the recommendation of the undersigned that the Commissioner's motion for summary judgment be granted. The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the

15

conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to plaintiff and all counsel of record.

Enter this _14th_ day of April, 2005.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge